**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

MAGNUM HUNTER RESOURCES, INC.; TEAL )
HUNTER L.P.; and GRUY PETROLEUM )
MANAGEMENT CO., )
                              )
           Plaintiffs, )
                              )
vs. )    Case No. CIV-04-203-M
                              )
THE APACHE TRIBE OF OKLAHOMA; THE )
APACHE TRIBAL TAX COMMISSION OF THE )
APACHE TRIBE OF OKLAHOMA; EMILY )
SAUPITTY; and DENNIS G. CHAPPABITTY, )
                              )
           Defendants. )

## ORDER

Pending before the Court are three motions to dismiss: the first was filed on behalf of

Defendants the Apache Tribe of Oklahoma ("Tribe") and the Apache Tribal Tax Commission of the

Apache Tribe of Oklahoma ("Tax Commission"); the second was filed on behalf of Defendant

Dennis G. Chappabitty ("Chappabitty"); and the third was filed on behalf of Defendant Emily

Saupitty ("Saupitty," and collectively with the Tribe, the Tax Commission, and Chappabitty,

"Defendants").  All three motions have been fully briefed and are now ripe for determination.

I.     Background

Plaintiffs Magnum Hunter Resources, Inc. ("Magnum Hunter"), Teal Hunter, L.P. ("Teal

Hunter"), and Gruy Petroleum Management Co. ("Gruy," and collectively with Magnum Hunter and

Teal Hunter, "Plaintiffs"), instituted this action to contest certain oil and gas severance taxes that

the Tribe assessed against them.  Magnum Hunter, through Teal Hunter, one of its subsidiaries, owns

an interest in the Apache Bromide Sand Unit ("Unit"), which is described in Plaintiffs' First

Amended Complaint as "a unit authorized and approved by order of the Oklahoma Corporation

Commission for the purpose of the unitized management, operation, and development of the Bromide Sand common source of supply underlying the lands included within the Unit." First Am. Compl. at ¶ 16.   Gruy, also a subsidiary of Magnum Hunter, operates the Unit.   According to Plaintiffs, "[t]he Unit includes both lands within the jurisdiction of the Apache Tribe and lands outside the jurisdiction of the Apache Tribe." *Id.* at ¶ 17.   The Tribe, exercising its sovereign authority to tax economic activities occurring on Tribal land, *see Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 137 (1982) ("The power to tax is an essential attribute of Indian sovereignty because it is a necessary instrument of self-government and territorial management. . . . [I]t derives from the tribe's general authority, as sovereign, to control economic activity within its jurisdiction, and to defray the cost of providing governmental services by requiring contributions from persons or enterprises engaged in economic activities within that jurisdiction."), and acting through the Tax Commission, assesses and collects oil and gas severance taxes from Plaintiffs.  Saupitty is the former Tax Commissioner for the Tribe.[1]   Chappabitty is the former counsel for the Tax Commission.

Central to this dispute is Plaintiffs' claim that the Tribe has exceeded (and continues to exceed) the scope of its sovereignty by taxing oil and gas severed from non-Tribal land.   In connection with this claim, Plaintiffs seek the following relief: (1) a declaration that the methodology utilized by Defendants to calculate oil and gas severance taxes is improper to the extent that Defendants assess and collect taxes on oil and gas severed from non-Tribal land; (2) a declaration that Saupitty and Chappabitty have been without authority to represent either the Tribe or the Tax Commission, and to collect taxes on their behalf, since January 1, 2001; (3) a declaration

---

[1]   The parties dispute whether Saupitty was properly relieved of her duties as Tax Commissioner for the Tribe, and they dispute whether, assuming that she was relieved of her duties, she has been properly reappointed to her former post.

that all tax assessments, fines, penalties, and other charges that Saupitty and Chappabitty imposed against Plaintiffs are void and without effect by virtue of the fact that neither Saupitty nor Chappabitty acted pursuant to Tribal authority when they imposed said tax assessments, fines, penalties, and other charges; and (4) a permanent injunction (a) enjoining Defendants from assessing or collecting any oil and gas severance taxes, penalties, or interest related to oil and gas severed from non-Tribal land, and (b) enjoining Defendants from taking any action arising from or in connection with Plaintiffs' failure to pay said taxes, penalties, or interest.

Relatedly, Plaintiffs assert fraud and conspiracy claims against Saupitty and Chappabitty in their individual capacities.  Plaintiffs allege that Saupitty and Chappabitty conspired to and did defraud Plaintiffs by assessing and collecting oil and gas severance taxes on behalf of the Tribe and the Tax Commission despite their lack of authority to represent those entities.  Plaintiffs further allege that Saupitty and Chappabitty "have not escrowed, segregated or otherwise secured disputed oil and gas severance taxes paid by Magnum Hunter.  Instead, Defendants Saupitty and Chappabitty have converted the disputed payments to their own use."  First Am. Compl. at ¶ 57.  In connection with these claims, Plaintiffs seek to recover actual and punitive damages.

Defendants assert that this action should be dismissed for a variety of reasons, including the following: (1) Plaintiffs' claims are barred by application of the doctrine of tribal sovereign immunity; (2) Plaintiffs have failed to exhaust all available tribal remedies; (3) subject matter jurisdiction is lacking; and (4) Plaintiffs have failed to state a claim upon which relief may be granted as to their fraud and conspiracy claims.  As explained in detail below, this action must be either stayed or dismissed in its entirety by application of the tribal exhaustion doctrine.  The remaining grounds for dismissal need not, and will not, be considered.

II.    Discussion

The Court's tribal exhaustion analysis involves a three-stage inquiry.  First, the Court must determine whether the tribal exhaustion doctrine is facially applicable under the facts of this case. *See Tillett v. Lujan*, 931 F.2d 636, 640 (10th Cir. 1991) (holding that the exhaustion doctrine applies only if the case would be subject to tribal court jurisdiction).  Second, assuming that the doctrine is facially applicable, the Court must decide whether an exception to the doctrine precludes its application in this instance.  *See Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1501 (10th Cir. 1997) (setting out exceptions to the exhaustion doctrine).  Third, assuming that the doctrine is facially applicable and that no exceptions bar its application, the Court must determine whether the doctrine should, for reasons of comity, apply here.  *See id.* at 1507 ("If . . . none of the . . . exceptions is present, the court must then make an inquiry whether to abstain based on [comity] concerns.").

Generally speaking, the tribal exhaustion doctrine requires litigants to exhaust all available tribal remedies before a federal court may properly exercise jurisdiction over the action.  *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1376 (10th Cir. 1993).  The doctrine has been delineated by the Tenth Circuit as follows: "as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies."  *Tillett*, 931 F.2d at 640.  The Tenth Circuit has "taken a strict view of the tribal exhaustion rule and ha[s] held that 'federal courts should abstain when a suit sufficiently implicates Indian sovereignty or other important interests.'"  *Farley*, 115 F.3d at 1507 (quoting *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1542 (10th Cir. 1995)).

4

The Court first considers whether the tribal exhaustion doctrine is facially applicable under the facts of this case. As the Supreme Court has made clear, "[t]he power to tax is an essential attribute of Indian sovereignty because it is a necessary instrument of self-government and territorial management." *Merrion*, 455 U.S. at 137. Because this action centers around the scope of the Tribe's sovereign authority to tax the economic activities of non-Indians, and thereby directly implicates the Tribe's right to self-government, the Court finds that the tribal exhaustion doctrine is facially applicable. *See Farley*, 115 F.3d at 1507 ("'[F]ederal courts should abstain when a suit sufficiently implicates Indian sovereignty or other important interests.'") (quoting *Watchman*, 52 F.3d at 1542).

The Court next considers whether any exception to the tribal exhaustion doctrine effectively precludes its application here. In *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, the Supreme Court identified three exceptions to the tribal exhaustion doctrine: (1) "where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' . . . or [(2)] where the action is patently violative of express jurisdictional prohibitions, or [(3)] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." 471 U.S. 845, 856 n.21 (1985) (internal citation omitted). More recently, the Supreme Court identified two additional exceptions: (1) "[w]hen . . . it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule,"[2] *Strate v. A-1 Contractors*, 520 U.S. 438, 459 n.14 (1997); and (2) where it is clear that the tribal court lacks jurisdiction. *Nevada v. Hicks*, 533 U.S. 353, 369 (2001).

---

[2] The "main rule" of *Montana v. United States*, 450 U.S. 544 (1981), is that "'the inherent sovereign powers of an Indian tribe'–those powers a tribe enjoys apart from express provision by treaty or statute–'do not extend to the activities of nonmembers of the tribe.'" *Strate*, 520 U.S. at 445-46 (quoting *Montana*, 450 U.S. at 565).

Plaintiffs contend that the futility exception bars application of the exhaustion doctrine in this case.  The facts underlying this contention are as follows: (1) on July 25, 2003, and in accordance with Section 151 of the Apache Taxation Act, Magnum Hunter timely appealed what it believed to be an improper assessment of oil and gas severance taxes, First Am. Compl. at ¶ 24; (2) by order dated November 21, 2003, Saupitty, purportedly acting in her capacity as Tax Commissioner, denied the appeal, *id.* at ¶ 26; (3) after denying the appeal, Saupitty allegedly advised Magnum Hunter that the Tax Commission would permit no further appeals from her ruling, *id.* at ¶ 28; (4) on December 19, 2003, in an effort to comply with Section 154 of the Apache Taxation Act, which "provides that any taxpayer against whom the Apache Tax Commission has assessed taxes, or who has paid taxes under written protest, may bring an action in Tribal Court to enjoin the Apache Tax Commission from collecting any taxes, or for the recovery of any taxes paid under written protest," *id.* at ¶ 29, Magnum Hunter filed a Petition against Defendants in the Court of Indian Offenses in the Anadarko Area Agency Office of the Bureau of Indian Affairs ("BIA"), *id.* at ¶ 31; (5) on January 20, 2004, Chappabitty, purportedly acting on behalf of the Tribe and the Tax Commission, moved to dismiss the Petition on the ground that the Court of Indian Offenses lacked jurisdiction over the controversy because the Tribe never explicitly submitted itself to the Court's jurisdiction, *id.* at ¶ 32; *see also* Mot. to Dismiss, Ex. E to First Am. Compl.; and (6) on February 6, 2004, counsel for Plaintiffs were advised by a Freedom of Information Act ("FOIA") coordinator who works for the BIA that the Anadarko Agency has in its possession no documents by which the Tribe has expressly conferred jurisdiction on the Court of Indian Offenses, or any other documents or correspondence that evidence the existence of an Apache Tribal Court or that indicate whether the Court of Indian Offenses has jurisdiction over the Tribe.  First Am. Compl. at ¶ 36; *see also*

February 6, 2004 Letter, Ex. H to First Am. Compl.  Plaintiffs conclude from the aforementioned facts and allegations that "[b]ecause no Tribal Court for the Apache Tribe exists, the doctrine of exhaustion of tribal remedies does not apply to the subject matter of this dispute."  First Am. Compl. at ¶ 37.

Plaintiffs' futility argument fails for two reasons.  First, Plaintiffs are mistaken to the extent they believe that "no Tribal Court for the Apache Tribe exists."  The BIA has promulgated regulations that create "Courts of Indian Offenses," also known as "CFR courts," *Tillett*, 931 F.2d at 638, to "provide adequate machinery for the administration of justice for Indian tribes in those areas of Indian country where tribes retain jurisdiction over Indians that is exclusive of state jurisdiction but where tribal courts have not been established to exercise that jurisdiction."  25 C.F.R. § 11.100(b).  The Apache Tribe of Oklahoma is listed among the tribes that have not established their own tribal courts, 25 C.F.R. § 11.100(a)(9)(ii), and is therefore subject to the jurisdiction of the CFR courts.  Further, the CFR courts will continue to exercise jurisdiction over the Tribe unless and until the Tribe establishes an independent court system.  25 C.F.R. § 11.100(c).  Because "CFR courts . . . function as tribal courts," *Tillett*, 931 F.2d at 640, an adequate Tribal forum exists in this case.

The second reason why the futility exception does not apply in this case is that, to the Court's knowledge, the action commenced by Plaintiffs in the Court of Indian Offenses, which involves the same challenge to the oil and gas severance taxes that is at issue in this case, is still pending in that Court.  Although this Court has been presented with Chappabitty's motion to dismiss Plaintiffs' Petition before the Court of Indian Offenses, the Court has not been advised as to the disposition of that motion.  Therefore, the Court can only assume that the litigation before the Court of Indian

Offenses is ongoing.[3]  The pendency of Tribal Court proceedings conclusively establishes both that exhaustion is not futile and that exhaustion is incomplete.

Having determined that the futility exception does not apply in this case, and that none of the remaining exceptions to the exhaustion doctrine apply, the Court finally considers whether, for reasons of comity, the exhaustion doctrine bars this Court's exercise of jurisdiction.  The Court begins by noting that the pendency of parallel proceedings before the Court of Indian Offenses, standing alone, likely warrants application of the exhaustion doctrine in this case.  *See Bowen v. Doyle*, 230 F.3d 525, 530 (2d Cir. 2000) ("The tribal exhaustion rule . . . bars federal courts from exercising jurisdiction over matters pending in tribal courts."); *Burlington N. R.R. Co. v. Red Wolf*, 196 F.3d 1059, 1065 (9th Cir. 1999) ("As a general rule, a federal district court should abstain from asserting federal question jurisdiction over claims that are identical to claims pending in tribal court until the tribal court has had a full opportunity to consider the basis for its own jurisdiction."); *Kirkpatrick v. Kirkpatrick*, 282 F. Supp. 2d 613, 616 (N.D. Ohio 2003); *Chiwewe v. Burlington N. and Santa Fe Ry. Co.*, 239 F. Supp. 2d 1213, 1215 (D.N.M. 2002).  Nevertheless, the Court will proceed to determine whether the federal policies underlying the exhaustion doctrine support its application here.

Three federal policies have been identified as supporting the tribal exhaustion doctrine: "(1) to further the congressional policy of supporting tribal self-government; (2) to promote the orderly administration of justice; and (3) to obtain the benefit of tribal expertise."  *Zah*, 5 F.3d at 1377-78 (citing *National Farmers Union*, 471 U.S. at 856-57).  When the conduct underlying the litigation

---

[3]     The Court has received an order bearing a file-stamped date of June 16, 2004 in which Judge Phil Lujan granted the Tribe's motion to intervene in that case.  Ex. 15 to Authority of Andrews Davis [docket no. 37].  Thus, the Court is satisfied that the case was still pending at least as recently as that date.

"arises on the reservation, these policies almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum." *Id.* at 1378. In contrast, when the litigation involves non-Indian conduct occurring off the reservation, "the policies behind the tribal exhaustion rule are not so obviously served." *Id.* In the latter scenario, the trial court must carefully examine each of the federal policies supporting the tribal exhaustion doctrine in "determining whether comity requires the parties to exhaust their tribal remedies before presenting their dispute to the federal courts." *Id.*

The conduct underlying this litigation is Defendants' assessment and collection of oil and gas severance taxes. Because Defendants are alleged to have assessed and collected severance taxes on both Tribal and non-Tribal land, the Court will analyze the three federal policies underlying the exhaustion doctrine as part of the more detailed comity analysis described above.

The first federal policy – furthering a congressional policy that encourages and respects tribal self-government – clearly supports application of the exhaustion doctrine in this case. The Tribe's assessment and collection of oil and gas severance taxes represents a fundamental exercise of Tribal sovereignty and "a necessary instrument of self-government and territorial management." *Merrion*, 455 U.S. at 137. Because the power to tax is of such vital importance to the very existence of the Tribe as an independent sovereign, and because the congressional policy of supporting tribal self-government strongly encourages intra-tribal resolution of such matters, at least in the first instance, *Farley*, 115 F.3d at 1508, deferring consideration of the merits of this case pending exhaustion of Tribal remedies is consistent with the congressional policy.

The second policy – promoting the orderly administration of justice – also supports application of the exhaustion doctrine here. As indicated above, Plaintiffs filed suit in the Court of Indian Offenses before initiating litigation in this Court. The evidence before this Court suggests

that the Tribal Court litigation is ongoing.  In the absence of any compelling reason for this Court to exercise jurisdiction at this time, and thereby undermine the authority of the Court of Indian Offenses, the Court finds that the orderly administration of justice demands that this Court abstain from proceeding further.

The third and final federal policy – obtaining the benefit of tribal court expertise – lends additional support to application of the exhaustion doctrine in this case.  Resolution of Plaintiffs' claims will undoubtedly require interpretation of Tribal constitutional and statutory provisions, including Tribal constitutional provisions governing the appointment and removal of Tribal officers, the Tribe's Taxation Act, and the Tax Commission's Rules and Regulations.  The Supreme Court has held that "tribal courts are best qualified to interpret and apply tribal law." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 (1987).  By deferring to the Tribal Court's expertise now, this Court will gain the insight and analysis that only the Tribal Court can provide if, after Plaintiffs exhaust the available Tribal remedies, Plaintiffs reassert their claims in this Court.

Based upon the foregoing analysis, the Court concludes that the federal policies underlying the tribal exhaustion doctrine are consistent with the Court's application of the doctrine in this case.  The Court further finds, therefore, that the tribal exhaustion doctrine requires that this case be either stayed or dismissed without prejudice to refiling upon Plaintiffs' exhaustion of all available Tribal remedies.  *See LaPlante*, 480 U.S. at 20 n.14 (holding that action improperly dismissed for lack of subject matter jurisdiction should, on remand, either be dismissed in accordance with the prudential tribal exhaustion rule announced in *National Farmers* or stayed pending exhaustion of tribal remedies).  As the Court finds no reason to stay this action and retain jurisdiction at this time, the Court will order this action dismissed without prejudice.

10

III.    Conclusion

Accordingly, the Court hereby GRANTS the Tribe and Tax Commission's Motion to Dismiss [docket no. 22] and DISMISSES Plaintiffs' First Amended Complaint [docket no. 34] in its entirety  and without prejudice for failure to exhaust tribal remedies.[4]  The Court DENIES as moot Chappabitty's and Saupitty's Motions to Dismiss [docket nos. 42 and 49, respectively]. Finally, the Court DENIES as moot Plaintiffs' Motion to Deposit Funds [docket no. 20].

**IT IS SO ORDERED this 21st day of October, 2004.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

---

[4]      The Court makes clear that this order of dismissal applies to all of Plaintiffs' claims, including the claims against Saupitty and Chappabitty in their individual capacities.  All of the claims arise out of the same set of facts, and all of them depend, to one degree or another, on the interpretation of Tribal law.  The fact that some of the claims may arise under the Court's diversity jurisdiction, while others may arise under the Court's federal question jurisdiction, is irrelevant. *Tillett*, 931 F.2d at 640 ("[A]s a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies.").